# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASSTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | 18 B 03147 |
| | ) | |
| PORSHA SIMMONS and LINDA NOVA, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | Judge Deborah L. Thorne |

## Memorandum Opinion

Porsha Simmons and Linda Nova (the "Debtors") filed a joint petition under chapter 13 of the Bankruptcy Code on February 5, 2018. On March 5, 2018, they attended their section 341 meeting with the office of the chapter 13 trustee, Marilyn Marshall. During the meeting, the Debtors were questioned about their marital status and responded by showing Ms. Marshall's attorney a copy of their "Certificate of Civil Union."[1] It appears to the court that the Debtors have generally fulfilled all requirements to confirm their plan or will have by the date now set for confirmation. Ms. Marshall has, however, filed a motion to dismiss one of the joint Debtors for ineligibility as a result of not holding a certificate of marriage. The court finds that the Debtors are eligible to file a joint petition under chapter 13 and the motion to dismiss will be denied.

## Discussion

### I. Basis of Motion to Dismiss

Ms. Marshall argues in her motion that under section 302(a) of the Bankruptcy Code, a joint case may only be filed by "an individual that may be a debtor and such individual's spouse." She points out that the word "spouse" is not defined in the Bankruptcy Code and cites Merriam-Webster's dictionary, which states that the common definition of "spouse" is "married person: husband, wife." She further cites the United States Trustee's website, which considers

---

[1] Debtors' counsel and counsel for the chapter 13 trustee confirmed that the Certificate of Civil Union was issued by the State of Illinois.

"spouse" to be an individual who is lawfully married under any state law. UNITED STATES DEP'T JUSTICE, CONSUMER AND CREDITOR INFORMATION (Sept. 14, 2017), https://www.justice.gov/ust/consumer-information.

Ms. Marshall argues that because the Debtors do not possess a marriage certificate, but rather possess a Certificate of Civil Union, they are ineligible to file as joint Debtors under chapter 13. She further contends that because the Debtors did not convert their civil union to a marriage during the year in which this was possible under Illinois law, they are not legally married and, therefore, neither individual qualifies as a spouse under Illinois law. She seeks an order from this court dismissing one of the Debtors and requiring the dismissed Debtor to file an independent case.

## II. Definition of Spouse under the Bankruptcy Code

The Bankruptcy Code provides in pertinent part that:

A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's *spouse.*

11 U.S.C. § 302(a) (emphasis added). Section 109(e) further defines chapter 13 eligibility by reference to an individual debtor and his/her "spouse." *See* 11 U.S.C. § 109(e).

The Bankruptcy Code does not define "spouse," nor is there a comprehensive federal definition to be found elsewhere. *See* 1 U.S.C. § 7; *United States v. Windsor*, 570 U.S. 744, 749–52, 775 (2013) (concluding that section 3 of the Defense of Marriage Act, Pub. L. No. 104–199, 110 Stat. 2419 (1996) (codified at 1 U.S.C. § 7), is unconstitutional); *De Leon v. Perry*, 975 F. Supp. 2d 632, 644 (W.D. Tex. 2014) (noting that the Supreme Court held section 3 of the Defense of Marriage Act to be unconstitutional), *aff'd sub nom. De Leon v. Abbott*, 791 F.3d 619

2

(5th Cir. 2015). Accordingly, the term "spouse" in the Bankruptcy Code is to be given its ordinary meaning. *See Clark v. Rameker*, 134 S. Ct. 2242, 2246 (2014).

The dictionaries are uniform in stating that a "spouse" is a "husband," a "wife," or an individual who is "married."[2] A "husband," in turn, is a "married man," a "wife" is a "married woman," and an individual is "married" when they are united in "wedlock," united in the "state of matrimony," or when they have a "husband" or "wife."[3] "Wedlock" in turn means the "state of marriage,"[4] state of "matrimony" means "the state of being married,"[5] and, as can be inferred from the immediately preceding sentence, one has a "husband" or a "wife" when one is "married" to a man or to a woman, respectively.[6] To determine whether one is a "spouse," then, under the ordinary meaning of that term in the Bankruptcy Code, the court must determine whether one is in the state of marriage with or in the state of being married to another individual.

---

[2] *Spouse*, DICTIONARY.COM, http://www.dictionary.com/browse/spouse (last visited May 16, 2018); *Spouse*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/spouse (last visited May 16, 2018); *Spouse*, ENGLISH OXFORD LIVING DICTIONARIES, https://en.oxforddictionaries.com/ (last visited May 16, 2018); *Spouse*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/spouse (last visited May 16, 2018); *Spouse*, BLACK'S LAW DICTIONARY 1621 (10th ed. 2014).

[3] *See, e.g., Husband*, DICTIONARY.COM, http://www.dictionary.com/browse/husband?s=t (last visited May 16, 2018); *Wife*, DICTIONARY.COM, http://www.dictionary.com/browse/wife?s=t (last visited May 16, 2018); *Married*, DICTIONARY.COM, http://www.dictionary.com/browse/married?s=t (last visited May 16, 2018); *Married*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/married (last visited May 16, 2018); *Married*, ENGLISH OXFORD LIVING DICTIONARIES, https://en.oxforddictionaries.com/definition/married (last visited May 16, 2018).

[4] *Wedlock*, DICTIONARY.COM, http://www.dictionary.com/browse/wedlock?s=t (last visited May 16, 2018).

[5] *Matrimony*, DICTIONARY.COM, http://www.dictionary.com/browse/matrimony?s=t (last visited May 16, 2018).

[6] To the extent the term "spouse" has or had an accumulated settled common law meaning, *see Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992), that established meaning does not differ from the ordinary meaning as found in dictionaries. *See, e.g., Gallagher v. Park W. Bank & Tr. Co.*, 921 F. Supp. 867, 877 (D. Mass. 1996) ("'[S]pouse' means a man or woman joined in wedlock, in short, one's husband or wife.") (internal quotations omitted) (citing, *inter alia*, Webster's Third New International Dictionary).

An individual is in a state of marriage with another person based on the individual's status vis-à-vis the other person under state law. *See, e.g., State of Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 383 (1930) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States . . . ."); *see also Tkachik v. Comerica Inc.*, No. 05-72703, 2006 WL 3825068, at *8 (E.D. Mich. Dec. 26, 2006), aff'd, 268 F. App'x 443 (6th Cir. 2008) ("However, determining who the participant is legally married to is dependent on state law because there is no federal common-law with respect to marriage."). Accordingly, the court looks to Illinois law to determine the nature of the Debtors' status vis-à-vis one another and whether or not that status means that they are in a state of marriage with one another.

If the two were validly married under the relevant provisions of the Illinois Marriage and Dissolution of Marriage Act, then the form and substance of the status of the two vis-à-vis one another under Illinois law would be such that they could be considered to be in a state of marriage with one another. *See* 750 Ill. Comp. Stat. 5/201. They are not married under that statute, so the court must determine whether or not the two can be said to be in a state of marriage under Illinois law when the form and substance of their status vis-à-vis one another derives from the two having been joined in a civil union under the Illinois Religious Freedom Protection and Civil Union Act.

The Illinois Religious Freedom Protection and Civil Union Act provides pertinently as follows:

> Protections, obligations, and responsibilities. A party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Illinois to *spouses*, whether they derive from statute, administrative rule, policy, common law, or any other source of civil or criminal law.

750 Ill. Comp. Stat. 75/20 (emphasis added). The statute also provides that:

> "Party to a civil union" means a person who has established a civil union pursuant to this Act. "Party to a civil union" means, and shall be included in, any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin", and other terms that denote the spousal relationship, as those terms are used throughout the law.

750 Ill. Comp. Stat. 75/10.

The status of two individuals joined in a civil union under the Illinois Religious Freedom Protection and Civil Union Act is thus substantively identical under Illinois law to the status of two individuals joined in a marriage under the Illinois Marriage and Dissolution of Marriage Act. For that reason, the court concludes that the substantive nature of the Debtors' status under Illinois law vis-à-vis one another means that they are substantively, if not formally, in a state of marriage with one another under Illinois law, and therefore both are each other's spouses under the Bankruptcy Code.

Ms. Marshall fails to cite any authority considering the Illinois statute or other analogous statutes that supports the dismissal of the joint Debtors.[7] There appear to be relatively few cases addressing similar situations, as state statutes tend to be unique. In a thoughtful analysis, the Bankruptcy Court for the Central District of California concluded that two individuals in a domestic partnership under California law were not spouses of one another under section 302 of the Bankruptcy Code despite the relevant California domestic partnership provision being largely

---

[7] The trustee cites *In re Allen*, 186 B.R. 769 (Bankr. N.D. Ga. 1995), where the court applied the common, dictionary meaning of the term "spouse" in section 302 and came to the conclusion that two individuals, who were neither formally married nor joined in any other type of union under state law, could not be joint debtors under the Bankruptcy Code. *Id.* The court there analogized to a case concerning two individuals who were merely cohabiting; it had no occasion to consider any domestic partnership or civil union statutes. *Id.* at 771, 772 (citing *In re Malone*, 50 B.R. 2 (Bankr. E.D. Mich. 1985)). This court has no quarrel with the proposition from that case that two individuals who are cohabiting with one another are not in a state of marriage with one another such that they are spouses under the Bankruptcy Code; indeed, this court has no occasion to consider that question at all given the facts of the case at bar.

similar to the Illinois provision cited above (75 Ill. Comp. Stat. 75/20). *See In re Villaverde*, 540 B.R. 431, 435, 438 (Bankr. C.D. Cal. 2015). The court there relied in part on a California case wherein the court stated that "the [California] Legislature has not created a 'marriage' by another name or granted domestic partners a status equivalent to married spouses." *Id.* at 435 (quoting *Knight v. Superior Court*, 128 Cal. App. 4th 14, 30, 26 Cal. Rptr. 3d 687 (2005)).

Most of the substantive differences outlined by the court in *Knight* between marriage and domestic partnership in California are not present in Illinois, however.[8] Under California law, for instance, individuals in a domestic partnership could not file a joint state income tax return. *Knight*, 128 Cal. App. 4th at 30. In Illinois, however, individuals in a civil union at one point could file such a joint return, though it appears as though they may not anymore. *See* Ill. Dep't Revenue, Information Bulletin, 2014 WL 465166, at *1 ("Taxpayers in a civil union that is not treated as a marriage for federal income tax purposes *must file their Illinois return* with their civil union partner using either the *'married filing jointly'* or *'married filing separately' filing status* . . . .") (emphasis added); *but see* ILL. DEP'T REVENUE, 2017 FORM IL-1040 INSTRUCTIONS (2017), http://www.revenue.state.il.us/taxforms/incmcurrentyear/individual/il-1040-instr.pdf, at 5 (directing Illinois filers to use the same status as on their federal return – see 26 C.F.R. § 301.7701–18(c); 26 U.S.C. § 6013(a)). Further, unlike in California, civil unions must be certified in the same way that a marriage is solemnized. *Compare* 750 Ill. Comp. Stat. 75/35 & 40, *with* 750 Ill. Comp. Stat. 5/201 & 209; *see also Knight*, 128 Cal. App. 4th at 30–31. Civil unions in Illinois may *not* be terminated in any manner other than by proceeding under the

---

[8] A very minor difference under California law noted in *Knight* that also exists in Illinois is the fact that two individuals may get married under the Illinois Marriage and Dissolution of Marriage Act at the age of 16 as long as they have parental consent; to be joined in a civil union, by contrast, both must be 18. *See Knight*, 128 Cal. App. 4th at 30; *compare* 750 Ill. Comp. Stat. 75/25(1), with 750 Ill. Comp. Stat. 5/203(1).

6

relevant divorce or annulment provisions of the Illinois Marriage and Dissolution of Marriage Act, which stands in stark contrast to the fact that, under California law, domestic partnerships in certain circumstances may be terminated simply by filing a notice with the Secretary of State. *See* 750 Ill. Comp. Stat. 75/45; *see also Knight*, 128 Cal. App. 4th at 31. This court concludes that the very minor difference in age requirements and the flip from allowing individuals in a civil union to file a joint income tax return to having those individuals effectively follow the federal regulations does not render the substance of the legal status conferred by a civil union materially different to that conferred by a formal marriage under Illinois law.[9]

The court in *Knight* also noted that the federal government treats individuals in a civil union differently than it treats individuals in a marriage. *Knight*, 128 Cal. App. 4th at 30. This is still true today. *See, e.g.*, 26 C.F.R. § 301.7701–18(c); *but see* 49 C.F.R. § 26.5. This court declines to find this different treatment by the federal government relevant to the substantive nature of the two Debtors' status under Illinois law;[10] even if it were to find this treatment relevant, it would not necessarily cut in favor of the conclusion that the substantive status conferred by both types of unions is different, since some federal regulations actually treat the two in an identical manner. *Compare* 49 C.F.R. § 26.5, *with* 26 C.F.R. § 301.7701–18(c).

---

[9] The disparity in state income tax treatment (as inferred from recent Illinois income tax instruction forms) is explainable by the fact that Illinois law explicitly tracks federal law for the purposes of determining when individuals may or must file a joint tax return. *See* 35 Ill. Comp. Stat. 5/502(c)(1)(B); *see also* 35 Ill. Comp. Stat. 5/102. One court has explained that the state's general adoption of the meaning of terms under the federal Internal Revenue Code (see 35 Ill. Comp. Stat. 5/102) "insures a certain level of uniformity, particularly since the Act utilizes federal taxable income as a starting point for calculating Illinois income tax liability." *Rockwood Holding Co. v. Dep't of Revenue*, 312 Ill. App. 3d 1120, 1127, 728 N.E.2d 519, 526 (2000). It can thus fairly be inferred that such explicit tracking does not otherwise normally occur under Illinois law and that the Illinois Income Tax Act constitutes an isolated exception to the otherwise complete parity in legal status enacted into law at 750 Ill. Comp. Stat. 75/10 & 75/20.

[10] It would be somewhat circular to determine the substantive nature of two individuals' status under state law by reference to federal law when this court is likewise interpreting federal law. Federal classification is indeed relevant to the extent that the state has chosen to follow the federal classification, as apparently is the case with the Illinois income tax, but that has been considered separately above.

Similarly, this court concludes that the fact that a separate state *might* not recognize or give validity to an Illinois civil union for various purposes has no relevance to the substance of the two Debtors' status under Illinois law. *Knight*, 128 Cal. App. 4th at 31; *compare Rosengarten v. Downes*, 71 Conn. App. 372, 802 A.2d 170 (2002), *with Salucco v. Alldredge*, No. 02E0087GC1, 2004 WL 864459, at *4 (Mass. Super. Mar. 19, 2004); *Neyman v. Buckley*, 153 A.3d 1010, 1019–20 (Pa. Super. 2016).

The court in *Villaverde* also relied on the notion that "'California [law] has created two separate and parallel institutions,' with marriage being considered the 'culturally superior status compared to a domestic partnership.'" *Villaverde*, 540 B.R. at 436 (quoting *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 994 (N.D. Cal. 2010)). The court in *Perry* bottomed its conclusion largely on two points. "First, domestic partnerships are distinct from marriage and do not provide the same social meaning as marriage." *Id.* Under Illinois law, the civil union might be separately classified from marriage, but this court notes that the above discussion on the lack of actual differences between the two institutions under Illinois law shows that a civil union is not *distinct* in substance from a marriage. To the extent that the court in *Perry* concluded factually that a domestic partnership does not provide the same social meaning as marriage or is culturally inferior to marriage, this court declines to make any such determination here and would further question any such determination's relevance to the legal substance of the parties' status under Illinois law. Second, the court in *Perry* noted that "domestic partnerships were created specifically so that California could offer same-sex couples rights and benefits while explicitly withholding marriage from same-sex couples." *Id.* Whatever the reason for initially enacting the Illinois civil union statute, any difference in the availability of a marriage or of a

8

civil union based on the sex of the individuals no longer exists in Illinois. *See* 750 Ill. Comp. Stat. 5/201; 750 Ill. Comp. Stat. 75/10.[11]

To the extent that the court in *Villaverde* relied at all on the separate formal classification of domestic partnerships, and not only on the various substantive differences between domestic partnerships and marriages under California law that are not present under Illinois law,[12] this court respectfully declines to follow the court in *Villaverde*. Whether or not two persons are in a state of marriage with one another such that they are spouses of one another under federal bankruptcy law depends on the substance of those individuals' status vis-à-vis one another under relevant state law. State law labels and classifications are not controlling in and of themselves; thus, the fact that Illinois law might term two individuals joined in a marriage under the Illinois Marriage and Dissolution of Marriage Act "spouses" while calling two individuals joined in a civil union "parties to a civil union" does not conclusively determine the federal question as to who exactly may be a "spouse" under the Bankruptcy Code.[13] *See, e.g., In re Miller*, 511 B.R. 621, 631 (Bankr. W.D. Mo. 2014) ("[A]bsent explicit Congressional intent to incorporate state law, the meaning of a term in a federal statute is a question of federal law, and the state label is not controlling.") (*citing In re Wilson*, 252 B.R. 739, 742–43 (B.A.P. 8th Cir. 2000)); *see also In re Camilli*, 94 F.3d 1330, 1331 (9th Cir. 1996) (noting that a state law label does not control whether a given obligation is a "tax" under the Bankruptcy Code). Any formal division or classification under state law therefore must give way to the substantive identicality of the two

---

[11] In fact, unlike the California domestic partnership statute, the Illinois civil union statute has never, since its enactment, distinguished on the basis of sex. *See* Illinois Religious Freedom Protection and Civil Union Act § 10, 2010 Ill. Legis. Serv. P.A. 96-1513 (West).

[12] For example, where the court discussed Cal. Fam. Code §§ 297.5 & 299.2. *Villaverde*, 540 B.R. at 435–36.

[13] Even if it did conclusively determine the federal question, it is unclear whether the labels under Illinois law are even different at all in light of statutory language *expressly* equating "party to a civil union" with "spouse" as that term is "used throughout the law." *See* 750 Ill. Comp. Stat. 75/10.

9

statuses where there is in fact substantive identicality, as there is under Illinois law. *See supra* pp. 6–9; 750 Ill. Comp. Stat. 75/10, 75/20.

In sum, Porsha Simmons and Linda Nova, the joint Debtors in this case, provided a Certificate of Civil Union. Because their legal status under Illinois law is substantively identical to the legal status of two individuals joined in a formal marriage under the Illinois Marriage and Dissolution of Marriage Act, the court concludes that the joint Debtors are substantively in a state of marriage with one another under Illinois law and are therefore spouses within the meaning of that term as used in sections 109(e) and 302(a) of the Bankruptcy Code. The two are therefore eligible to file a joint chapter 13 case.

### Conclusion

The trustee's motion to dismiss will be denied by separate order for the reasons set forth herein.

ENTER:

_____
Deborah L. Thorne
United States Bankruptcy Judge

Dated: May 17, 2018